ANNIE E. O'SULLIVAN, as Administratrix, etc., of DENIS O'SULLIVAN, Deceased, Respondent, *v.* JOSEPH A. FLYNN, Appellant.

*Negligence — injury to a servant taking up a pipe which has been bent around a rock, from its springing back — act of a fellow-servant — risk of the employment — the fact that it was bent when laid is not evidence of negligence.*

In an action to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant was the surviving partner of a firm of contractors engaged in constructing a sewer; that in the performance of the work a line of pipe about 250 or 300 feet long was laid for the purpose of supplying a steam boiler with water; that in laying the pipe a rock was encountered and that pursuant to the direction of the deceased member of the firm the pipe was bent around the rock, no elbow or swinging joint being placed in the pipe, although it was customary to use those appliances where the pipe could not be laid in a straight line; that on the day of the accident a foreman of the contractors directed two engineers and the plaintiff's intestate, who was a night watchman in the employ of the contractors, to disconnect the pipe without giving them any instructions as to the manner in which they were to perform the work; that as the men uncoupled the piece of pipe which had been bent around the rock, the pipe sprang up, knocking the plaintiff's intestate into the sewer trench.

It further appeared that both of the engineers were familiar with the work, and one of them testified that he was familiar with the coupling and uncoupling of pipes and that when he started to disconnect the pipe he knew what kind of a bend was in it.

*Held,* that the evidence did not justify a finding of negligence on the part of the defendant;

That when the intestate and his associates were directed to uncouple the pipe they were required to adopt proper methods to perform the work and to take proper precautions to avoid injury;

That if the injury to the deceased was caused by the negligent manner in which the work was performed, whether such negligence was that of the deceased or

of his associates, it was a risk incident to the employment or the negligence of a fellow-servant, for which the defendant was not liable;

That the proof as to the manner in which the pipe was originally laid did not establish negligence.

PATTERSON and HATCH, JJ., dissented.

APPEAL by the defendant, Joseph A. Flynn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of December, 1900, upon the verdict of a jury for $741.66, and also from an order entered in said clerk's office on the 12th day of December, 1900, denying the defendant's motion for a new trial made upon the minutes.

*Alvin C. Cass,* for the appellant.

*Denis O'Sullivan,* for the respondent.

INGRAHAM, J.:

The plaintiff, as administratrix of Denis O'Sullivan, sues to recover the damages sustained by his death. The deceased was in the employ of the members of a copartnership, who were contractors, and at the time of the accident were engaged in constructing a sewer in the city of New York. Subsequently one of the copartners died, and the action is continued against the defendant as surviving partner. The defendant used a boiler in the performance of the work under the contract, and connected that boiler with a hydrant to supply it with water. That connection was made by a pipe which had been put in place by the defendant some two or three months before the accident. In placing this pipe in position it seems that there was a rock in the way, and the men had difficulty in making the connection. O'Sullivan, the deceased member of the firm, told his foreman to bend the pipe around the rock, whereupon one of the men took a bar and drove it in the ground and bent the pipe around so as to connect it with the boiler. After this connection was made, the pipe was covered with earth and remained in that condition until it was disconnected at the time of the accident. The man who laid this pipe testified that the usual way of laying pipe, where it cannot be laid straight, and an angle or bend is necessary, is to put either an elbow or swinging joint in, and neither of these was

placed in this pipe. This pipe was about 250 to 300 feet long, was connected with a hydrant at one end and with a barrel at the other, and the boiler was fed from the barrel. The deceased had been a night watchman upon this work for about three months prior to the accident, and he was at this work from the time this pipe was connected down to the time of his death. He went to work after six o'clock at night and left at seven o'clock in the morning, when the workmen came to relieve him. The plaintiff's testimony tended to show that about six o'clock on the 7th of September, 1896, after the men had quit work, a foreman of the defendant directed two engineers, named Lawlor and Walsh, and the deceased to disconnect this pipe. In pursuance of this direction the deceased with the two engineers commenced to disconnect the pipe. The deceased was on the side near the trench lifting up the pipe; Lawlor straddled the pipe near the joint to be disconnected and Walsh stood on the other side away from the trench with a wrench. The sewer was there about eighteen feet deep and the pipe was about six to eight feet from the sewer. Lawlor held the pipe in his hand, Walsh was unscrewing it with the wrench, and O'Sullivan was standing back of Lawlor raising the pipe to allow Walsh to unscrew the coupling. When the coupling was unscrewed the pipe sprung out, knocked Lawlor down and knocked the deceased into the trench. Upon proof of these facts the court submitted the question of the defendants' negligence to the jury who found in favor of the plaintiff.

The court charged the jury: "If you find that he (deceased) was injured in consequence of some imperfection in the method of using this pipe, then you will say whether the imperfection that you find existed was due to any negligence on the part of the defendant." The question that was, therefore, submitted to the jury was, whether the defendant was negligent in the method of using this pipe, the rebound of which when disconnected caused the injury. At the close of the plaintiff's case, and again at the close of the whole case, the defendant moved to dismiss the complaint, which motion was denied and to which ruling the defendant excepted; and the first question that is presented is whether from this evidence there was any theory that justified the jury in finding the defendant guilty of negligence in the performance of any duty which he owed to the deceased, which caused the injury.

As before stated, there was evidence introduced on behalf of the plaintiff that the method adopted by the defendant was not the proper method of laying this pipe; that where such a bend was required an elbow or joint should be used. But certainly the defendant had the right to adopt such a method in laying the pipe used in relation to the work as he thought best; and, so far as appears, the pipe worked well so long as it was in use and accomplished the purpose that was intended; and although these workmen have testified that they would have laid the pipe in another way, there is nothing to justify a finding that the method of laying this pipe by swinging it around the stone instead of putting in an elbow or joint endangered the men on the work or caused them an injury. When these employees of the defendant were called upon to uncouple this pipe they received their orders from the defendant's foreman. So far as appears, his instructions were simply to uncouple this pipe, and he does not appear to have been present directing the men to do the work at the time of the accident. Walsh, an engineer who was engaged in uncoupling this pipe, testified that he was entirely familiar with pipes of this kind; that he has had to do with water pipes for twenty-eight years, and was thoroughly familiar with coupling and uncoupling pipes; that this pipe had been coupled and was being uncoupled in the usual manner; the only way that it could be coupled that he had ever known; that he had known O'Sullivan, the deceased, about four or five years and had seen him before that time at work coupling and uncoupling pipes; that the witness had never known of a pipe that has laid on the ground or in the ground for a month or more, on being uncoupled to straighten out, to spring or rebound; that they commenced to uncouple the pipe at the hydrant and had uncoupled it for most of the distance except two or three lengths, before the accident happened. As before stated, neither the defendant nor the superintendent or foreman gave any direction to these men as to how they were to uncouple this pipe. They were simply directed to uncouple it and take it up, and they proceeded to do that work in their own way. The men were familiar with the work of coupling and uncoupling pipes. Neither of the men, it would seem, anticipated that when the pipe was uncoupled it would spring as it did; and these employees, when they undertook to uncouple this

pipe, assumed the risks incident to doing that work, and certainly the master was not responsible for the methods adopted by them. These methods they selected themselves. Two at least of the three men who were engaged in uncoupling this pipe were engineers and skilled workmen, familiar with the work, and certainly it was not negligent for the master to leave it to them to select the methods of doing the work that he instructed them to do. If there was negligence it was the negligence of the men doing the work in not uncoupling this pipe in the trench, instead of lifting it out of the trench and holding it above the ground, or in not taking some other precaution to prevent the spring from injuring them; but this was a mere detail of the work which the master quite properly left to the skilled servants that he had employed to do the work. It was the negligence either of the deceased or of those engaged with him in the performance of the work; in which latter case it would be the neglect of a fellow-servant for which the master was not responsible. It is quite apparent that it was not the negligence of the master in laying the pipe that caused the injury. The pipe was laid to supply the boiler with water and it performed its work, and no accident happened until the men undertook to uncouple it when it was no longer needed; but it was this particular pipe, laid in this particular way, that the men were directed to uncouple. There is nothing to show that they did not understand the situation and the danger of doing this work as well as the master, or that the master could have anticipated that they would so uncouple the pipe that they would be injured by its rebound. It is quite apparent that precaution could have been taken which would have prevented the spring of the pipe from injuring any one, and it was because of a failure to take these precautions that the injury happened. Walsh expressly testified that when he started working to disconnect the pipe he knew what kind of a bend was in it, as he had seen it before. We think it clear from the whole case that no negligence could be predicated upon the way that the pipe was originally laid; that when these workmen were directed to uncouple the pipe they were required to adopt the proper methods to perform the work; that it was their duty to disconnect it in a proper way and to take the proper precautions to avoid injury; that if the injury to the deceased was caused by a negligent way of uncoupling the pipe, whether that

negligence was that of the deceased, or those engaged with him, it was a risk incident to the employment, or the negligence of a fellow-servant for which the defendant was not liable. On the whole case there was no evidence to justify a finding of negligence against the defendant, and the complaint should have been dismissed.

It follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and LAUGHLIN, J., concurred; PATTERSON and HATCH, JJ., dissented.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.